David Henderson
Law Offices of David Henderson
3003 Minnesota Drive, Suite 203
Anchorage, AK 99503
Phone: 907-677-1234
Fax: 888-965-9338
dh@henderson-law.com

Attorneys for Plaintiffs Brink

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARY BRINK, individually, and as Personal Representative of the ESTATE OF FRANKLIN A. BRINK, and J.B., a minor child,<br><br>    Plaintiffs,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. _____ |

## **Complaint**

COME NOW plaintiffs and allege as follows:

### **Parties, Jurisdiction and Venue**

1) Franklin A. Brink [hereinafter "Frank"], was, at all times pertinent, an adult residing in or near Bethel, Alaska within the District of Alaska.

2) On or about October 25, 2017, Frank died.

3) Plaintiffs Mary Brink [hereinafter "Mary"] and J.B. were, at all times pertinent, adult residents of Bethel, Alaska.

4) Mary was, at all times pertinent, Frank's legally married spouse.

5) J.B. is Frank's natural son.

6) Frank, Mary, and J.B. were/are Alaskan Natives.

7) On or about March 5, 2018, Mary petitioned for an estate to be opened on Frank's behalf in the Superior Court for the State of Alaska in the Fourth Judicial District at Bethel styled *In the Matter of the Estate of Franklin Brink*, Case No. 4BE-18-00044PR.

8) An estate has been opened and Mary has been appointed as Frank's personal representative.

9) Mary is named as a plaintiff in her capacity as personal representative of said Estate, as well as individually.

10) The Yukon-Kuskokwim Health Center [hereinafter "YKHC"] and the Alaska Native Medical Center ["ANMC"] are hospital facilities providing comprehensive health-care services to Alaska Natives under Title III of the *Indian Self-Determination and Education Assistance Act of 1975* [Public Law 93-638].

11) Both YKHC and ANMC are signatories to the Alaska Tribal Health Compact, and as such receive federal funding under annually negotiated "Annual Funding Agreements" with the Indian Health Service and/or other agencies of defendant United States.

12) Upon information and belief, Dr. Katie Dawson is, and at all times pertinent was, a physician either employed by ANMC, or serving as its agent.

Complaint
*Brink v. U.S.A.* 2

13) Upon information and belief, Dr. Dawson was at all times pertinent certified by the American Board of Medical Specialties in the field of General Surgery.

14) At all times pertinent, Dawson was acting within the scope of said certification for purposes of AS 08.68.230(f)(4) and within the scope of her employment at the ANMC.

15) Upon information and belief, Dr. William Eggimann is, and at all times pertinent was, a physician either employed by YKHC, or serving as its agent.

16) Upon information and belief, said Dr. Eggimann was at all times pertinent certified by the American Board of Medical Specialties in the field of Family Practice.

17) At all times pertinent, Dr. Eggimann was acting within the scope of said certification for purposes of AS 08.68.230(f)(4) and within the scope of his affiliation with the YKHC.

18) At all times pertinent, defendant United States' agents and employees were each acting as agent for the other and/or as co-participants concerning the events giving rise to the instant action.

19) At all times pertinent, Frank was a medical patient of said Dr. Eggimann, Dr. Dawson, the YKHC, the ANMC, and defendant United States.

20) More than six months ago, the claim giving rise to this suit was presented to the appropriate federal agency within the meaning of 28 USC § 2675(a).

Complaint
*Brink v. U.S.A.* 3

21) Said agency has denied the claim, either by expressly rejecting it outright, or by failing to make a final disposition of it within six months, as contemplated by 28 USC § 2675(a).

22) Any medical malpractice of the YKHC, the ANMC, or any of their agents, employees, and contractors, are properly actionable under the *Federal Tort Claims Act*.

## General Allegations

23) Frank had a family history of colon cancer.

24) Given his family history of colon cancer, he presented himself to the YKHC in or around June 2013 for cancer screening.

25) On June 11, 2013 he underwent a colonoscopy procedure administered by Dr. William Eggimann at the YKHC.

26) During that colonoscopy, Dr. Eggimann discovered and treated four adenomatous polyps.

27) Following that colonoscopy, YKHC scheduled a follow-up visit for one year later.

28) On or about June 24, 2014, Frank returned to the YKHC for the follow-up visit.

29) At that time, Dr. Eggimann was again reminded of Frank's family history of colon cancer and Frank's history of polyps.

30) On or about June 24, 2014, Dr. Eggimann again performed a colonoscopy at the YKHC.

31) He discovered numerous polyps within Frank's colon.

Complaint
*Brink v. U.S.A.* 4

32) He removed some and tattooed others to better enable future identification.

33) Pathology reports showed that some of the discovered polyps might be premalignant.

34) Dr. Eggimann scheduled another colonoscopy for mid-August 2014.

35) Frank returned to the YKHC for the scheduled follow-up on September 3, 2014.

36) On or about September 3, 2014, the above-identified Dr. Katie Dawson performed a colonoscopy.

37) She did not discover the polyps that Dr. Eggimann had identified and marked during his June 24th colonoscopy, or any other malignant or pre-malignant conditions.

38) As a result of Dr. Dawson's colonoscopy, she informed Frank that he did not need any further colon treatment for five years.

39) On September 9, 2014, YKHC sent Frank a letter stating that the biopsies were benign; that he did not have an increased risk of cancer, and; that he would not need another colonoscopy for five years.

40) Frank justifiably relied upon the assurances of Dr. Dawson and the YKHC concerning his colon health.

41) Over the next few years, Frank continued to present himself for medical care at both the YKHC and the ANMC.

42) During those visits, YKHC and ANMC had either actual notice, or inquiry notice, of Frank's family history of colon cancer; his cancer screenings in 2013 and 2014; the 2013 and 2014 colonoscopies; the polyps that were removed

Complaint
*Brink v. U.S.A.* 5

LAW OFFICES OF DAVID HENDERSON
3003 Minnesota Drive, Suite 203
Anchorage, Alaska 99503
Phone: (907) 677-1234 - Facsimile: (888) 965-9338
dh@henderson-law.com

and discovered; lab tests and biopsies, and; Frank's overall heightened risk of having contracted colon cancer.

43) In or around February 2017, health care providers finally ascertained that Frank had a cancerous mass in his colon and advanced stage IVB rectal cancer.

44) The cancerous mass was situated in the same spot that Dr. Eggimann had tattooed during his June 2014 colonoscopy and that Dr. Dawson failed to discover three months later.

45) ANMC providers referred Frank back to the YKHC for end-of-life care.

46) In the eight-month period leading up to his death, Frank suffered tremendous pain and discomfort, a grueling and intrusive course of treatment, severe weight loss, extreme incontinence, and a host of other highly debilitating and agonizing medical conditions and complications -- most or all of which would have been avoided and alleviated by earlier intervention and treatment.

47) Practitioners at YKHC and ANMC failed to timely treat Frank's deadly colon/rectal cancer condition.

48) Their failure to do so was an extreme departure from the standard of care and constituted recklessness within the purview of AS 09.55.549(f).

49) As a direct and proximate result, Frank suffered grievously and died.

50) As a direct and proximate result of the lapses in medical care heretofore alleged, Frank incurred pre-death non-economic damages, past and future, including but not limited to:

    (a) Physical pain and suffering;

    (b) Emotional distress and psychological injury;

Complaint
*Brink v. U.S.A.*                                                           6

(c) Inconvenience, and;

(d) Loss of enjoyment of life.

51) As a direct and proximate result of the lapses in care heretofore alleged, Frank also sustained economic damages, past and future, including, but not limited to:

(a) Expenses for medical care and treatment;

(b) Burial and/or funeral expenses;

(c) Loss of earnings and earning-capacity;

(d) Loss of subsistence harvests and subsistence capability, and;

(e) Loss of household- and non-market services, including the ability to perform such services for himself and family member(s).

52) Defendant United States is liable to each of the named plaintiffs for negligence in the minimum sum of $100,000.00 as to each, the exact amount to be proved at trial.

WHEREFORE, plaintiffs pray for judgment against defendant United States as follows:

1) In favor of the Estate for Frank's pre-death damages, as contemplated by AS 09.55.570;

2) In favor of the Estate for Frank's wrongful death damages, as contemplated by AS 09.55.580;

3) In Mary's favor for negligence, including loss-of-spousal-consortium;

4) In J.B.'s favor for negligence, including loss-of-parental-consortium;

Complaint
*Brink v. U.S.A.* 7

LAW OFFICES OF DAVID HENDERSON
3003 Minnesota Drive, Suite 203
Anchorage, Alaska  99503
Phone: (907) 677-1234 - Facsimile: (888) 965-9338
dh@henderson-law.com

5) For an award of compensable costs, compensable attorney's fees, and any applicable interest;

6) For any other relief the court may deem just and proper.

DATED at Anchorage, Alaska, this 8th day of March, 2019.

        LAW OFFICES OF DAVID HENDERSON

        Attorneys for Plaintiffs

        s/ David Henderson
        David Henderson  #9806014

        VALCARCE LAW OFFICE

        Attorneys for Plaintiffs

        s/ Jim Valcarce
        Jim Valcarce, ABA #9505011

Complaint
*Brink v. U.S.A.*          8